UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**CARRIE ANN SEDOR,**

    **Plaintiff,**

    v.

**STATE FARM FIRE AND CASUALTY COMPANY,**

    **Defendant.**

Case No. 2:24-cv-3714
Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court on Plaintiff Carrie Ann Sedor's Motion for Partial Summary Judgment (ECF No. 35) and Defendant State Farm Fire and Casualty Company's Motion for Partial Summary Judgment (ECF No. 40). Defendant responded in opposition to Plaintiff's Motion for Partial Summary Judgment (ECF No. 45) and Plaintiff replied in support (ECF No. 48). Plaintiff responded in opposition to Defendant's Motion for Partial Summary Judgment (ECF No. 47) and Defendant replied in support (ECF No. 50). For the reasons set forth below, the Court **GRANTS** Defendant State Farm Fire and Casualty Company's Motion for Partial Summary Judgment (ECF No. 40) and **DENIES** Plaintiff Carrie Ann Sedor's Motion for Partial Summary Judgment (ECF No. 35).

## BACKGROUND

This litigation arises out of an insurance dispute related to a fire that occurred on May 27, 2023, and damaged a commercial property owned by Plaintiff at 224 Howard Street, Bridgeport, Ohio 43912. (ECF Nos. 3, 39-3.) The fire originated at a neighboring property and spread to Plaintiff's property. (Sedor Dep., ECF No. 39, PageID 870, 32:8–12.) On June 2, 2023, Plaintiff submitted an insurance claim under her State Farm Businessowners Policy (number 95-E8-U820-

5) effective April 30, 2023 to April 30, 2024. (ECF No 40-1, PageID 1201; Radcliff Dep., ECF No. 37, PageID 562, 40:8–11.) Defendant assigned the claim to the field on June 5, 2023, and scheduled an inspection for June 14, 2023. (Radcliff Dep., ECF No. 37, PageID 562–63, 40:8–41:1.)

Over the next few months, Defendant made a series of payments to Plaintiff and her contractor, Epic. On June 16, 2023, Defendant paid $51,195.75 to Plaintiff and $4,056.58 to Epic; on July 19, 2023, Defendant paid $8,250.00 to Plaintiff; and on August 29, 2023, Defendant paid $52,018.32 to Plaintiff. (ECF No. 39-17.) As of August 2023, Defendant had issued approximately $115,000 in payments, which covered the $112,000 that Epic estimated repairs would cost. (Sedor Dep., ECF No. 39, PageID 891–92, 936, 53:20–54:2, 98:12–16; ECF No. 39-8, PageID 1074, 1101.)

Following these payments, Plaintiff raised concerns about damage to the property's foundation, so Defendant hired an engineer to address Plaintiff's concerns. (Sedor Dep., ECF No. 39, PageID 913, 75:11–20; Radcliff Dep., ECF No. 37, PageID 594, 72:14–23.) When the engineer concluded that some of the foundation had been damaged by the fire, Defendant solicited a repair estimate from Epic. (Radcliff Dep., ECF No. 37, PageID 598–99, 76:24–77:5.) Before Epic provided this estimate, Plaintiff and Epic parted ways. (Sedor Dep., ECF No. 39, PageID 895, 57:3–15.) Plaintiff contacted three other contractors—ServPro, Grae-Con, and Cattrell. (*Id.*, PageID 904, 915, 917, 66:17–21, 77:3–13, 79:18–21.) Plaintiff ultimately hired Cattrell, and Cattrell inspected the property with Defendant in March 2024. (*Id.*, PageID 918, 80:3–5; Clark Dep., ECF No. 38, PageID 730–31, 63:5–64:11.)

Rick Clark, the claim specialist employed by Defendant assigned to Plaintiff's case, and Brian Applegarth, Plaintiff's contractor at Cattrell, worked together to resolve disputes about

2

whether certain items were covered by Plaintiff's insurance policy and how much it would cost to repair them. (*See* Radcliff Dep., ECF No. 37, PageID 599–600, 603, 77:21–78:11, 81:8–12; ECF Nos. 51-9, 51-15, 51-17, 51-18.) On March 21, Defendant received an estimate from Cattrell for $242,300, which included repair costs for the foundation. (Clark Dep., ECF No. 38, PageID 734–35, 67:15–68:2; ECF No. 39-15, PageID 1166.) Defendant responded with its own draft estimates; one on March 30 for $156,920.12 and one on April 16 for $177,805.71. (Clark Dep., ECF No. 38, PageID 747–49, 768–69, 80:12–82:2, 101:18–102:6.) In May 2024, Cattrell sent Defendant a revised estimate that increased the cost of foundation repair from approximately $40,000 to approximately $113,000. (*See id.* PageID 786–87, 119:17–120:11.)

Plaintiff filed suit in June 2024, while Defendant and Cattrell were in the process of reconciling their various estimates. (ECF No. 1, ¶ 1; Radcliff Dep., ECF No. 37, PageID 599–602, 77:17–80:6.) Ms. Sedor brings claims for breach of contract, breach of the covenant of good faith and fair dealing, bad faith, as well as requests for punitive damages and attorney's fees. (ECF No. 3.)

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for

summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

When cross-motions for summary judgment are filed, each party, as a movant, bears the burden of meeting the summary judgment standard. *Ray v. McCloud*, 507 F. Supp. 3d 925, 930 (S.D. Ohio 2020) (Watson, J.). The failure of one party to carry its burden does not mean the other party should prevail on its motion; rather, the Court should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## ANALYSIS

Both Plaintiff and Defendant moved for summary judgment on Plaintiff's bad faith claim and punitive damages request. (ECF Nos. 35, 40.) The parties do not dispute that Ohio law applies. (*See, e.g.*, ECF Nos. 35, 40 (citing Ohio law).) As a federal court exercising diversity jurisdiction over state-law claims, the Court, sitting in Ohio, applies Ohio law. *See, e.g.*, *Comm'r of Internal Revenue v. Est. of Bosch*, 387 U.S. 456, 464–65 (1967); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). "In diversity cases, the federal courts must apply state law 'in accordance with the then controlling decision of the highest state court.'" *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d

4

509, 517 (6th Cir. 2001) (quoting *United States v. Anderson County, Tennessee*, 761 F.2d 1169, 1173 (6th Cir. 1985)).

I.  **Plaintiff's Bad Faith Claim**

In Ohio, insureds may bring tort claims for bad faith against insurers who do not act in good faith when handling an insurance claim. *See Zoppo v. Homestead Ins. Co.*, 644 N.E.2d 397, 399–400 (Ohio 1994). An insurer "fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Id.* at 400 (citation omitted). An insurer lacks reasonable justification when it acts in an arbitrary or capricious manner. *See Hoskins v. Aetna Life Ins. Co.*, 452 N.E.2d 1315, 1320 (Ohio 1983).

However, an insurer is not liable for bad faith simply because it denies a claim for benefits, acts negligently, or makes a bad judgment. *See id.*; *Rauh Rubber, Inc. v. Berkshire Life Ins. Co.*, No. 98-4122, 98-4244, 1999 WL 1253062, at *2 (6th Cir. Dec. 16, 1999) (applying Ohio law); *Schaller v. Nat'l Alliance Ins. Co.*, 496 F. Supp. 2d 890, 899 (S.D. Ohio 2007) (applying Ohio law). For example, an insurer's decision to deny a claim may be reasonably justified when "the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that give rise to the claim." *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 605 N.E.2d 936, 943 (Ohio 1992); *see also Retail Ventures, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 691 F.3d 821, 834–35 (6th Cir. 2012) (applying Ohio law). A court may properly grant summary judgment to an insurer on a claim of bad faith where the record is devoid of evidence tending to show a lack of good faith. *Labate v. Nat'l City Corp.*, 680 N.E.2d 693, 698 (9th Dist. Ohio Ct. App. 1996).

Here, Defendant maintains that it acted with reasonable justification when processing Plaintiff's insurance claim. The Court agrees. Plaintiff takes issue with several aspects of Defendant's process, but the evidence does not demonstrate that Defendant acted in bad faith.

Plaintiff asserts that she is entitled to $177,805.71—the amount listed in Defendant's April 16, 2024 draft estimate—and that Defendant has not paid her the full amount. (ECF No. 35, PageID 159; ECF No. 47, PageID 1328; ECF No. 51-16.) As of August 2023, Defendant had paid Plaintiff and her contractor, Epic, approximately $115,000, which covered the full amount that Epic estimated repairs would cost (approximately $112,000). (Radcliff Dep., ECF No. 37, PageID 646, 124:11–20; ECF No. 39-17.) A few months later, Plaintiff parted ways with Epic and retained a new contractor, Cattrell Companies. (Sedor Dep., ECF No. 39, PageID 895, 917–18, 57:3–15, 79:18–80:16.) In March 2024, Cattrell provided a new estimate to Defendant, but the parties disagreed about whether certain items were covered by Plaintiff's insurance policy and how much it would cost to repair them. (Radcliff Dep., ECF No. 37, PageID 599–600, 603, 77:21–78:11, 81:8–12.) Rick Clark, the claim specialist employed by Defendant assigned to Plaintiff's case, and Brian Applegarth, Plaintiff's contractor at Cattrell, worked together to resolve these disputes. (*See* ECF Nos. 51-9, 51-15, 51-17, 51-18.) As part of the reconciliation efforts, Defendant prepared a draft supplemental estimate, which totaled $177,805.71. (ECF No. 51-16; *see, e.g.*, Clark Dep., ECF No. 38, PageID 815–16, 148:20–149:9.) Before the parties finalized that supplemental estimate, Plaintiff filed suit and Mr. Applegarth was instructed to stop communicating with Defendant. (Clark Dep., ECF No. 38, PageID 750–51, 83:23–84:16; Applegarth Dep., ECF No. 51, PageID 1459–60, 97:24–98:22.)

Although Plaintiff claims she is entitled to $177,805.71 and that Defendant acted in bad faith by failing to pay her that full amount, the evidence does not support Plaintiff's position.

Instead, the evidence shows that Defendant worked cooperatively with Plaintiff's contractor on a supplemental estimate and that Plaintiff filed suit before the parties finalized the $177,805.71 figure. There is no evidence to suggest that Defendant acted in bad faith.

Next, Plaintiff argues that Defendant's delay in processing her claim demonstrates bad faith. (ECF No. 35, PageID 160–61; ECF No. 47, PageID 1329–30.) Yet, it is undisputed that (1) Defendant assigned the claim to the field within three days of being notified about the claim, (2) Defendant's inspection of the property occurred less than two weeks after being notified about the claim, (3) Defendant made an initial payment of $51,195.75 two days after inspecting the property, and (4) Defendant paid approximately $115,000 to Plaintiff less than three months after being notified about the claim. (Radcliff Dep., ECF No. 37, PageID 562–63, 40:8–41:1; Sedor Dep., ECF No. 39, PageID 935–36, 97:6–98:16; ECF No. 39-17.) This timeline demonstrates that Defendant acted in a timely manner, not in bad faith. *See Royal Ridge Lane Condo. Ass'n v. State Farm Fire & Cas. Co.*, Case No. 1:20-CV-01439-CEH, 2022 WL 3424447, at *3–4 (N.D. Ohio Aug. 16, 2022) (applying Ohio law).

Plaintiff also asserts that Defendant's lack of communication establishes bad faith. (ECF No. 47, PageID 1329; ECF No. 48, PagID 1343–44.) Specifically, Plaintiff contends that Defendant did not contact her during January and February 2024. Defendant offers a reasonable explanation for this: during those months, Defendant was waiting for Plaintiff's contractor to send an estimate and, after receiving that estimate, Defendant would have "adjusted the loss accordingly." (Clark Dep., ECF No. 38, PageID 714–15, 717, 47:3–48:6, 50:10–14 (explaining that Defendant had a conversation with ServPro in December and ServPro indicated that they were "waiting for the building to come down" and would send the estimate to Defendant "[a]s soon as

7

that's done").) Plaintiff has not shown that this explanation is unreasonable or that Defendant's lack of communication was arbitrary or capricious.

Finally, Plaintiff contends that Defendant acted in bad faith by attempting to minimize its payments and disputing the need for certain repairs. For example, Plaintiff claims that Defendant questioned the need for roof repairs and omitted certain items from coverage, including doors, floor coverings, and an air conditioning unit. (ECF No. 35, PageID 160; ECF No. 47, PageID 1329.) But mere disagreement over whether a loss is covered is insufficient to establish bad faith. *CyrusOne, LLC v. Great Am. Ins. Co.*, 174 N.E.3d 41, 53 (1st Dist. Ohio Ct. App. 2021); *Hoskins*, 452 N.E.2d at 1320 ("Mere refusal to pay insurance is not, in itself, conclusive of bad faith."). Moreover, it is undisputed that Defendant ultimately paid Plaintiff for repairs to those items. (ECF No. 35, PageID 160; ECF No. 47, PageID 1329.) In addition, Plaintiff asserts that Defendant acted in bad faith by disputing the amount of foundation block requiring repair and requesting a competitive bid to perform foundation repairs. (ECF No. 35, PageID 160.) Again, disputing the scope or cost of repairs is not arbitrary or capricious conduct sufficient to establish bad faith. Further, the parties were working towards an agreement on foundation repairs when Plaintiff filed suit. (*See* Radcliff Dep., ECF No. 37, PageID 599–602, 77:13–80:6.)

In sum, the evidence shows that Defendant paid Plaintiff approximately $115,000 and was working with Plaintiff's contractor to resolve additional coverage requests when Plaintiff filed suit. Plaintiff has not demonstrated that Defendant acted in an arbitrary or capricious manner. Instead, Defendant offered reasonable justifications for its conduct. Accordingly, the Court **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** Defendant's Motion for Summary Judgment with respect to Plaintiff's bad faith claim.[1]

---

[1] The parties dispute whether Plaintiff properly identified extracontractual damages that she suffered as a result of Defendant's bad faith actions. (ECF No. 40, PageID 1196–97; ECF No. 45,

## II. Plaintiff's Request for Punitive Damages

If a plaintiff succeeds on a bad faith claim, "punitive damages are available upon a showing of actual malice." *Asmaro v. Jefferson Ins. Co. of N.Y.*, 574 N.E.2d 1118, 1123 (6th Dist. Ohio Ct. App. 1989). "'Actual malice' is defined as '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Zoppo*, 644 N.E.2d at 402 (quoting *Preston v. Murty*, 512 N.E.2d 1174 (Ohio 1987)). Attorney's fees "may be awarded as an element of compensatory damages where the jury finds that punitive damages are warranted." *Id.*

Plaintiff contends that the arguments she made in support of her bad faith claim also establish that she is entitled to punitive damages. (ECF No. 35, PageID 161; ECF No. 47, PageID 1332–33.) For the reasons discussed above, Plaintiff's arguments are insufficient to show that Defendant acted in bad faith. Given that actual malice is a higher standard, Plaintiff's arguments are also inadequate to establish that she is entitled to punitive damages. Finally, to the extent Plaintiff seeks attorney's fees based on Defendant's bad faith or an award of punitive damages, that request is denied given the Court's holdings herein. *See, e.g.*, *Zoppo*, 644 N.E.2d at 402; *B-T Dissolution, Inc. v. Provident Life & Accident Ins. Co., Inc.*, 192 F. App'x 444, 447 (6th Cir. 2006). Accordingly, Defendant's Motion for Summary Judgment is granted with respect to Plaintiff's request for punitive damages.

---

PageID 1314; ECF No. 47, PageID 1331–32; ECF No. 48, PageID 1344.) Because the Court holds that no reasonable juror could conclude that Defendant acted in bad faith, it does not reach the parties' arguments regarding extracontractual damages.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant State Farm Fire and Casualty Company's Motion for Partial Summary Judgment (ECF No. 40) and **DENIES** Plaintiff Carrie Ann Sedor's Motion for Partial Summary Judgment (ECF No. 35).  Plaintiff's bad faith claim and punitive damages request are **DISMISSED**.

This case remains open.

**IT IS SO ORDERED.**

**10/22/2025**                                                 **s/Edmund A. Sargus, Jr.**
**DATE**                                                         **EDMUND A. SARGUS, JR.**
                                                                        **UNITED STATES DISTRICT JUDGE**